
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRI TRONG HUYNH, | No. 18-55117 |
| Petitioner-Appellant, | D.C. No. 8:16-cv-00812-RGK-DFM |
| v. | |
| DEBBIE ASUNCION, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted August 14, 2019
Pasadena, California

Before: SCHROEDER and GRABER, Circuit Judges, and M. WATSON,**
District Judge.

A jury convicted petitioner Tri Trong Huynh of first-degree murder for his

role in a gang-related beating that killed Kerry Te. The jury also found true a gang

special circumstance that required a finding that Petitioner "intentionally murdered

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Michael H. Watson, United States District Judge for
the Southern District of Ohio, sitting by designation.

Kerry Te while [Petitioner] was an active participant in the Asian Crips criminal street gang." *See* Cal. Penal Code § 190.2(a)(22). Petitioner was sentenced to life in prison without the possibility of parole, plus one year.

There were three distinct ways the jury could have found Petitioner guilty of first-degree murder. First, Petitioner could have been the actual killer and acted with malice aforethought. Second, Petitioner could have intended to aid and abet the killer in committing the crime, actually aided and abetted the killer, and had knowledge that the killer intended to commit the crime. Third, Petitioner could have been an aider and abettor under a "natural and probable consequences" theory.

After Petitioner was sentenced, the California Supreme Court decided *People v. Chiu*, 325 P.3d 972, 974 (Cal. 2014), which held that "an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine." (Emphasis omitted.) *Chiu*, therefore, invalidated the third alternative theory under which Petitioner may have been convicted. "A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam).

2

Petitioner's *Chiu*-related habeas claim was summarily denied by the California state courts, leaving no reasoned state-court opinion to review. Accordingly, on habeas review, we "must determine what arguments or theories . . . could have supported[] the state court's decision" and Petitioner must meet his burden "by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98, 102 (2011). Petitioner has failed to meet this burden.

We agree with the parties that an instructional error was committed in this case. The dispute on appeal is whether the state court unreasonably concluded that the error was harmless beyond a reasonable doubt. Habeas relief under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), is available only if the state-court decision: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Therefore, under AEDPA, "the harmlessness determination itself" must have been unreasonable to entitle a petitioner to habeas relief, *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (emphasis omitted) (quoting *Fry v. Pliler*, 551 U.S. 112,

3

119 (2007)), "[a]nd a state-court decision is not unreasonable if 'fairminded jurists could disagree' on its correctness," *id.* (quoting *Richter*, 562 U.S. at 101).

The state court reviewing Petitioner's habeas claim reasonably could have concluded that the instructional error was harmless beyond a reasonable doubt. As stated above, in order to find the gang special circumstance true, the jury had to find, among other things, that "[Petitioner] intentionally murdered Kerry Te." Indeed, the prosecutor explained the gang special circumstance in those terms: "This enhancement requires that the defendant have an intent to kill." The prosecution's first two theories of murder required some level of intent from Petitioner related to the murder. But the "natural and probable consequences" theory did <u>not</u> require the jury to find an intent related to the killing. *Chiu*, 325 P.3d at 978–80.

The jury's true finding on the gang special circumstance strongly suggests that no juror based his or her decision to convict for first-degree murder on the natural and probable consequences theory. Because we presume that jurors followed the instructions, *United States v. Smith*, 831 F.3d 1207, 1215 (9th Cir. 2016), they necessarily found unanimously that Petitioner "intentionally murdered Kerry Te" as required by the instructions for the gang special circumstance. It is hard to imagine that they found the same intent *lacking* with respect to the murder

4

itself. *See People v. Brown*, 202 Cal. Rptr. 3d 95, 108 (Ct. App. 2016) ("It is possible in a given case to conclude the giving of an erroneous natural and probable consequences instruction was harmless beyond a reasonable doubt when the jury finds the defendant guilty of first degree murder and finds the gang special circumstance true, because the special circumstance required finding the defendant intentionally killed."). That logic is enough for a fairminded jurist to conclude that the trial court's natural and probable consequences instruction was harmless given the deferential standard of review under AEDPA.

*Reyes v. Madden*, No. 18-55232, 2019 WL 2644033 (9th Cir. June 27, 2019) (unpublished), and *Brown*, 202 Cal. Rptr. 3d 95, are not to the contrary. Those cases involved additional circumstances strongly suggesting that the jury relied on the "natural and probable consequences" theory. *See Reyes*, 2019 WL 2644033, at *2–3 (confusing jury instructions and misleading comments during closing argument); *Brown*, 202 Cal. Rptr. 3d at 107–09 (pointed jury notes, minimal evidence of guilt, a different special finding suggesting the jury relied on the "natural and probable consequences" theory, and irregularities in the taking of the jury verdict). No such circumstances are present here. We are constrained by the highly deferential standard under AEDPA, concluding only that the state court

5

reasonably could conclude that the instructional error was harmless in the circumstances here.

**AFFIRMED.**